IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

YOLANDA GOODMAN,                                          PLAINTIFF
on behalf of herself and all similarly
situated persons

v.                              No. 3:14-cv-229-DPM

CRITTENDEN HOSPITAL ASSOCIATION, INC.;
EUGENE K. CASHMAN, III; W. BRAD McCORMICK;
CIGNA HEALTH AND LIFE
INSURANCE CO.; JAMIE R. CARTER, JR;
DAVID G. BAYTOS; DAVID RAINES, JR;
JASON W. COLLARD; HERSCHEL F. OWENS;
ANDREW LUTTRELL; DONNA B. LANIER;
CAROL C. McCORMACK; KEITH M. INGRAM;
RANDALL CATT; WILLIAM JOHNSON;
LANNIE L. LANCASTER; JULIO P. RUIZ;
SHERRY L. LONDON; NESS S. SECHREST;
RANDY R. SULLIVAN; LEVEN WILLIAMS;
METHODIST LE BONHEUR HEALTHCARE                          DEFENDANTS

ORDER

1. **Introduction.** In September 2014, Yolanda Goodman got a notice from

Cigna Health and Life Insurance Company saying her employer-sponsored

health insurance was gone—that since May 2014 she'd been uninsured.

Goodman had outstanding doctor's bills she thought were covered. She'd

gotten benefits statements saying her claims on the health plan were being

processed and her coverage was good. № 53 at 27–29.

Crittenden Hospital Association, Goodman's employer, provided the plan. It turned out that for several years it had been underfunded. The Hospital stopped contributing to the plan in 2011 when money got tight. № 53 at 23. Employee contributions were floating the entire plan. In 2014, when Cigna became claims administrator, the Hospital and the plan began to falter. Cigna allegedly knew the plan was in trouble, but didn't tell the beneficiaries. № 53 at 26–27. Instead, Cigna said claims were being processed and coverage was good. Then Cigna stopped processing claims and sent the September notice telling the beneficiaries they'd been uninsured for months. № 53 at 29.

Goodman has sued on behalf of all the plan beneficiaries left in the lurch. She claims that Cigna's mail-outs misled the beneficiaries about the plan's health, and that Cigna cost the plan a substantial provider discount by refusing to process claims. № 53 at 26 & 44. Methodist Le Bonheur Healthcare lent two of its executives to the Hospital as CEOs. Goodman also says Methodist is responsible for those executives' failure to care for the plan as fiduciaries. № 53 at 21 & 51. All these claims, the parties agree, are governed by ERISA. 29 U.S.C. § 1001 et seq.

Cigna and Methodist seek dismissal of Goodman's claims as a matter

of law. № 61 & 69. Cigna argues that Goodman hasn't alleged a sufficient injury to the plan, as opposed to herself, and that Cigna was not a fiduciary for disclosure purposes. № 70 at 2–3. Cigna also challenges Goodman's state-law claim for constructive fraud, but Goodman is abandoning that claim against Cigna. № 78 at 13. Methodist argues that Goodman's theory of liability against it—*respondeat superior*—doesn't exist under ERISA, and doesn't apply on these facts because the lent executives weren't under Methodist's direction and control. № 62 at 7 & 10.

2. **Cigna.** Cigna's motion, № 69, is denied. Goodman says that Cigna harmed the plan by not processing claims and therefore depriving the plan of Cigna's substantial provider discount. № 53 at 44–45. This claim is good at the pleading stage. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). And Goodman's claim about Cigna obscuring the plan's condition may proceed too. Cigna might not have been the disclosure fiduciary on paper, but the paper is only as good as Cigna's conduct. *Harold Ives Trucking Company v. Spradley & Coker, Inc.*, 178 F.3d 523, 525–26 (8th Cir. 1999). If Cigna assumed authority for claim mail-outs, then its acts cover the paper. *Ibid.* All

Goodman's claims are about injuries to the plan, not just to her. This suffices. 29 U.S.C. § 1109(a).

**3. Methodist.** Methodist's motion, № *61*, is granted. The question is whether Methodist is a fiduciary under ERISA.

• **The Statute.** An ERISA fiduciary exercises discretionary authority or control in managing the plan; exercises authority or control in managing or disposing of plan assets; or exercises discretionary authority or responsibility in administering the plan. 29 U.S.C. § 1002(21)(A). Methodist is not a named fiduciary or a *de facto* fiduciary. Citing the principle of *respondeat superior*, Goodman says that Methodist is an actual fiduciary nonetheless because Methodist employed Cashman and Baytos. *№ 53 at 51.* RESTATEMENT (THIRD) OF AGENCY § 2.04 (2006).

Methodist's motion isn't resolvable simply on Goodman's pleaded allegations. She says Cashman talked to and sought advice from Methodist about Hospital business. *№ 53 at 21.* That's enough. Goodman has pleaded a plausible claim on direction and control—notwithstanding Methodist's attempt to paper against this possibility in the documents lending Cashman to the Hosptial. *Missouri Pacific Railroad Company v. Champlin & Wells, Inc.,* 775

F.2d 255, 257 (8th Cir. 1985). The Court must therefore address a "knotty problem": is *respondeat superior*, a venerable agency principle, part of ERISA's definition of a fiduciary? *Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011).

• **The Precedent.** The cases go both ways. Neither the Supreme Court nor the Eighth Circuit has searched ERISA for *respondeat superior* liability, but other courts have. The Seventh Circuit seems inclined to find it based on ERISA's adoption of general agency principles and *respondeat superior's* pedigree in that law. *Ibid.* Other circuits have seen or assumed that this principle is in this statute, but with little analysis. *National Football Scouting, Inc. v. Continential Assurance Company*, 931 F.2d 646, 649 (10th Cir. 1991); *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986). The Fifth Circuit has held that this kind of vicarious liability exists as a matter of ERISA's federal common law, but only when the employer was knee deep in managing the employee who was acting as a fiduciary. *Kral, Inc. v. Southwestern Life Insurance Company*, 999 F.2d 101, 103 (5th Cir. 1993).

There are some helpful district court opinions. In *Kling v. Fidelity Management Trust Company*, the court reasoned that *respondeat superior* may

be inferred in statutes absent an express intent otherwise, and found no such intent in ERISA. 323 F. Supp. 2d 132, 145–47 (D. Mass. 2004). The *Stanton v. Shearson Lehman/American Express, Inc.* court held a brokerage firm liable for the fiduciary acts of its broker–employee because making brand-name brokerage firms responsible for their employees' violations of fiduciary duty served ERISA's protective purpose. 631 F. Supp. 100, 104–05 (N.D. Ga. 1986).

Another group of cases goes the other way. The Supreme Court has cautioned against tacking remedies and causes of action onto ERISA. *Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 209 (2002); *Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993). When facing the question presented here, some trial courts have heeded this admonition. One refused to find *respondeat superior* liability because ERSIA limits liability to named and *de facto* fiduciaries and expresses no intent to hold nonfiduciaries liable for a fiduciary's breaches. *In re AOL Time Warner, Inc. Securities and ERISA Litigation*, 2005 WL 563166, at *4 n.5 (S.D.N.Y. 10 March 2015). Another noted the absence of any express contemplation of vicarious liability in the text or history of this statute, and found it "difficult to envision a scenario in which a principal could be liable under a *respondeat superior* theory without itself

meeting the definition of a functional fiduciary." *Woods v. Southern Company*, 396 F. Supp. 2d 1351, 1370 n.10 (N.D. Ga. 2005). (The Fifth Circuit's acceptance of *respondeat superior* — but only when the employer "actively and knowingly participated" in the employee's fiduciary breach — makes the same point from the other direction. *Kral*, 999 F.2d at 103.) And an older case rejected vicarious liability because defining an entity as a fiduciary through common law agency principles would expand the statute. *Tool v. National Employee Benefit Services, Inc.*, 957 F. Supp. 1114, 1120–21 (N.D. Cal. 1996).

• **The Reasons.** This statute and the precedent give a choice between uncertainties. The Court "must be content to choose the lesser." *Burnet v. Guggenheim*, 288 U.S. 280, 288 (1933). The lesser uncertainty here is this: *respondeat superior* liability isn't part of ERISA's definition of a fiduciary.

ERISA's "carefully crafted and detailed enforcement scheme," *Mertens*, 508 U.S. at 254, crowds out this doctrine. This statute is a package: a comprehensive compromise ten years in the making. *Knudson*, 534 U.S. at 209; *Mertens*, 508 U.S. at 262. Employees won some important points in the statute's crafting — for example, ERISA expanded the common law's definition of a fiduciary. *Mertens*, 508 U.S. at 262. But employers, and those who work

with them, gained some ground, too—for example, a narrower definition of "equitable relief" than known to courts of equity. *Id.* at 256–58. The Supreme Court has therefore been "especially" reluctant to infer causes of action and remedies not "specifically authorized" in the statute. *Knudson,* 534 U.S. at 209; *see also Mertens,* 508 U.S. at 254. That means the question is not whether ERISA bars a certain kind of liability, but whether ERISA "affirmatively *authorizes*" it. *Mertens,* 508 U.S. at 255 n.5 (emphasis original). It does not.

It's true that *respondeat superior* is, carefully speaking, neither a remedy nor a cause of action; it's a principle of liability—holding A responsible for B's actions because the two are one in the law's eyes. RESTATEMENT (THIRD) OF AGENCY § 2.04 (2006). But the doctrine would expand who may be liable for a fiduciary's violations of duty, and that would alter the balance Congress struck when it expanded the common law's concept of a fiduciary. *Mertens,* 508 U.S. at 262; *United Centrifugal Pumps v. Schotz,* 1991 WL 274232, at *5 (N.D. Cal. 12 June 1991). *Respondeat superior* defines who may be a defendant. And that re-definition would challenge the Supreme Court's observation that ERISA itself defines who may be a defendant for certain actions. *Harris Trust and Savings Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 246 (2000). Nor

does the policy of *respondeat superior* fit comfortably into ERISA. One of the chief rationales for this doctrine is that employers can, and often do, order their employees' work to limit discretion and individual action. RESTATEMENT (THIRD) OF AGENCY § 2.04 cmt. b. But ERISA singles out fiduciaries and defines them by their exercise of discretion. 29 U.S.C. § 1002(21)(A).

While the common law is often a starting point for analyzing ERISA, *Harris Trust and Savings Bank*, 530 U.S. at 250, it isn't the stopping point. The common law must give way if it's inconsistent with ERISA's language, structure, or purpose. *Hughes Aircraft Company v. Jacobson*, 525 U.S. 432, 447 (1999); *Travelers Casualty and Surety Company of America v. IADA Services, Inc.*, 497 F.3d 862, 864–65 (8th Cir. 2007). Congress gave ERISA wide fiduciary language and a considered liability structure; the statute aims both to protect employees and to control administrative costs. *Mertens*, 508 U.S. at 262–63. Effectively expanding ERISA liability through *respondeat superior* would not fill a statutory gap. It would discombobulate the statutory balance.

The cases that discern *respondeat superior* liability in ERISA don't wrestle enough with these points. *Howell* relied on one precedent that used agency law to define an employee under ERISA, and another recognizing *respondeat*

*superior* liability under Title VII. 633 F.3d at 563. But agency is how the law usually distinguishes employees from independent contractors; and the Supreme Court recognized *respondeat superior* liability under Title VII because that statute expressly defined "employer" to include "agents." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998). ERISA defines who is a fiduciary by what a person actually does in relation to a plan. *Kling* relied on a Fair Housing Act precedent holding that tort statutes are assumed to adopt ordinary vicarious liability rules. 323 F. Supp. 2d at 146. But ERISA is not reducible to a tort statute; it's torts, agency, and trusts combined, the legislative framework for "the Nation's private employee benefit system." *Knudson*, 534 U.S. at 209. The Supreme Court has recognized limited restitution claims against a non-fiduciary "party in interest" under 29 U.S.C. §§ 1106 and 1132(a)(3). *Harris Trust and Savings Bank*, 530 U.S. at 242, 250. Goodman, though, hasn't alleged that Methodist was a "party in interest" who held plan assets. *№ 53 at 39–41.*

Goodman asks to keep Methodist in the case solely because, she says, Cashman and Baytos were Methodist's agents in handling the Hospital health plan. Notwithstanding the Methodist/Hospital agreement, that's plausible on

the facts. But fiduciary liability under ERISA does not, as a matter of law, run

that deep.

*  *  *

Cigna's motion to dismiss, № 69, is denied. Methodist's motion to

dismiss, № 61, is granted. Goodman's constructive fraud claim under

Arkansas law against Cigna is dismissed without prejudice.

So Ordered.

_D.P. Marshall Jr._
United States District Judge

_12 November 2015_