IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| YOLANDA GOODMAN on behalf of herself and all similarly situated persons, ) ) ) ) ) ) PLAINTIFF, ) ) v. ) ) CRITTENDEN HOSPITAL ) ASSOCIATION, INC., EUGENE K. ) CASHMAN, *et al.* ) ) ) DEFENDANTS. ) ) | **Case No. 3:14-cv-00229-DPM-jtk** (Hon. Judge D.P. Marshall, Jr.) |

**MEMORANDUM OF LAW OF THE PLAINTIFF CLASS IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT AND RESPONSE TO OBJECTIONS FILED BY YOLANDA GOODMAN, DELORIS SUMPTER, AND ROGER SUMPER**

COME NOW, the Plaintiff Class, by and through Watson Burns, PLLC and Ballin, Ballin & Fishman, P.C. (collectively referred to herein as "Lead Counsel"), and submit their Memorandum of Law in Support of Final Approval of Proposed Class Settlement ("Proposed Settlement" or "Proposed Settlement Agreement") and Response to Objections filed by Yolanda Goodman, Deloris Sumpter and Roger Sumpter to the Proposed Settlement Agreement and would state as follows:

1

# INTRODUCTION

Pursuant to this Court's 14 March 2017 Order granting preliminary approval of the Proposed Settlement, the Court set 26 June 2017 as the deadline for any Class Member to file an objection to the Proposed Settlement. (Dkt. No. 162 Order at p. 2). The Court also required the Class Notice and Claim Administrator (the "Claim Administrator") to file its final report of claims on 31 August 2017.

Noting that "the final claims report will contain important information bearing on the proposed settlement's fairness and adequacy," the Court permitted any timely Objector to supplement his or her objection on 15 September 2017 as based solely on the final claims report. (*Id*. at p. 6).

Of the 626 Class Members, only 3 have filed objections to the Settlement – Yolanda Goodman and Denny Sumpter's parents,[1] Deloris Sumpter and Roger Sumpter (the "Objectors"). (*See*, Dkt. No. 179, Declaration of Class Notice Administrator F. Scott Conaway Confirming CAFA Compliance, Notice Compliance and Results of Claim Administration (hereinafter, "Conaway Decl.") at ¶ 17). Each of these Objectors is represented by Denny Sumpter, and each Objector filed objections on or before June 29, 2017. (*See*, Dkt. Nos. 173 & 174, Objection to Proposed Settlement and Memorandum in Support Thereof).

Following the filing of the Claims Administrator's final claim report on 31 August, none of the Objectors filed any supplemental objections based on the final claims report. As a result, Plaintiff Class now submits this Memorandum of Law in Support of Final Approval of Proposed Class Settlement and Response to Objections.

---

[1]As is addressed below, the objections of Sumpter's parents are entitled to little, if any, weight given the potential for conflict arising with respect to Sumpter and his close family members. (*See infra.* at p. 9-10)

2

As stated herein, the objections raised to the proposed Settlement Agreement and distribution of proceeds are entirely without merit and should be overruled by this Court. As the final claims report clearly demonstrates, the proposed Settlement makes the Class Members whole, thereby undermining the Objectors' claims to the contrary and likely explaining their decision against filing supplemental objections. Likewise, the attorneys' fees provided for by the proposed Settlement and requested by Lead Counsel are demonstrably reasonable under the circumstances. This Court should reject the objections filed to the proposed Settlement Agreement.

## ARGUMENT

**1. Under the governing legal standards, the proposed Settlement should be approved.**

Under Eighth Circuit law, the proposed Settlement should be approved. As the Court in *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) has observed as to the class settlement process:

> "Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval where, as here, it binds class members. Such approval may issue 'only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate.' Fed. R. Civ. P. 23(e)(2). Review of a proposed class-action settlement, therefore, proceeds in two stages. At the first stage, the parties submit the proposed settlement to the Court, which must then make 'a preliminary fairness evaluation.' Manual for Complex Litigation (Fourth) § 21.632 (2004); *accord, e.g., Valencia v. Greater Omaha Packing*, Nos. 8:08CV88, 8:08CV161, 2013 U.S. Dist. LEXIS 135747, 2013 WL 5347442, at *1 (D. Neb. Sept. 23, 2013). If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to absent class members, in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ('[D]ue process requires that notice of a proposed settlement be given to the class')."

"To determine whether a settlement satisfies these standards, the Court must consider: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's

financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 282 (D. Minn. 1997)(quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). Moreover, the Settlement enjoys a presumption of fairness. *See, e.g., In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)) (settlement agreements are "presumptively valid"). This is especially true where, as here, the Settlement was reached through mediation with a third-party neutral and substantial discovery had taken place. *See, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig.*, MDL No. 1958, 2013 U.S. Dist. LEXIS 27155, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); *Hashw v.*, 182 F. Supp. 3d at 943.

Additionally, courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (citations omitted). The court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial." <u>White v. Nat'l Football League</u>, 822 F. Supp. 1389, 1416 (D. Minn. 1993).

Likewise, the fact that there has been little opposition from the class strongly favors approval. *In re Uponor, Inc.*, No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 90294, at *27-28 (D. Minn. June 29, 2012)(citing *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by 10% of a class "strongly favors settlement").

Briefly stated, the proposed Settlement squarely meets these requirements and should be approved. First, despite the plaintiffs' potentially weak case on the merits, the Settlement makes the Class Members whole. Indeed, Defendants potentially could have entirely prevailed had this

case been litigated to its end.  Specifically, Defendants had a significant chance to prevail on summary judgment on the grounds that their failure to fund the Plan did not constitute a breach of fiduciary duty and was not otherwise actionable.  *See, e.g., Holdeman v. Devine*, 572 F.3d 1190, 1191-2 (10th Cir. 2009) (affirming district court findings that trustee of an ERISA self-funded employee benefit plan did not breach his fiduciary duty and was not liable to plan participants by, among other things, failing to pay plan participant claims prior to terminating the plan and filing bankruptcy and by failing to inform plan participants of funding problems).  Under such circumstances and in light of the Hospital's bankruptcy proceedings, Class Members may well have been left with nothing.

Second, Defendant Crittenden Hospital Association ("CHA") is bankrupt and its insurance coverage has been eroded by the costs of defense in this case.  (Declaration of William F. Burns at ¶¶ 21, 22, attached hereto as **EXHIBIT A**).  Outside of the proposed settlement, there are simply no funds to be had.  Third, this case is a complex, ERISA class action, and the expense of ongoing litigation is significant.  Finally, there is virtually no opposition to the proposed Settlement among the Class.  As is discussed in detail herein, only 3 objections have been filed, two of which were filed by the parents of Denny Sumpter, class counsel who opposes the settlement due to misplaced concerns about attorneys' fees.  As is set forth more fully herein and throughout the record in this cause, the proposed Settlement should be approved.

    **2.**    **The Objector's argument that the Class is not made whole by the proposed Settlement is plainly wrong.**

In their objections, each of the Objectors contends that the proposed Settlement fails to make the Class whole.  These objections are meritless for a variety of reasons, and, notably, the Objectors have not filed any supplemental objections since the filing of the final claims report in support of their position.  Indeed, the reason why the Objectors have added nothing to their

Objections is simple: the claims report confirms the accuracy of Lead Counsel's previous representations to the Court contained in the Motion for Preliminary Approval of Proposed Class Settlement (Dkt. No. 158) – that the total dollar loss to the Class Members is well below the $500,000 Settlement Fund allotted to the Class. Indeed, the total dollar value of all claims (as fully reimbursed) is of $334,380.07. This sum includes both the total amount of all medical bills paid by the Class Members and the total amount of all medical bills that have been pursued in collection against Class Members. Accordingly, the Class Members will easily be made whole under the terms of the proposed Settlement. None of the objections raised prior to the final claims report demonstrate otherwise.

Indeed, in Plaintiff Goodman's initial response to the Motion seeking preliminary approval of the Settlement, Goodman effectively admits as much. (*See* Memorandum in Support of Response to Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 160). Goodman's opposition to preliminary approval of the proposed Settlement was largely based upon the fact that Goodman "believes the overall potential claims to be much higher than presented." *Id*. at 4. Yet, Goodman admitted that "Class Counsel cannot yet determine with certainty the amount of funds expended by class members out of pocket" and that, "[u]ltimately, the amount of claims reimbursement will only be determinable upon administration of the claims after settlement." *Id*. at 4-5. Importantly, Goodman further admitted that she "highlights these issues, again, not to dismay the Court from ultimately approving the settlement amount, but to outline the real potential that the claims by the class members could exceed the amount available in the settlement fund." *Id*. at 6. Presumably, then, if the amounts available are sufficient to cover the Class Member's claims, Goodman has no meritorious objection to the Settlement. In fact, having completed the claims process, it is apparent that the Class claims of $334,380.07 are

easily covered by the $500,000.00 available to the Class Members. Accordingly, Goodman's objection on these grounds is without merit.

Moreover, and contrary to the Objectors' claims, the ultimate fairness of the Settlement Fund does not rely "on the assumption that certain bills are made uncollectible either by provider contract agreements to not balance bill the insureds, or by application of the statute of limitations." (Objectors' Memo at p. 3). Because the Proposed Settlement was originally designed pay to Class Members those amounts that the Plan would have remitted to medical providers had the Plan been properly funded,[2] Lead Counsel did take these factors into account when estimating the amount that should be allocated to the Settlement Fund (*i.e.*, $500,000). However, if the Settlement is approved, none of the Class Members' claims will be denied on the basis that the bills being sought in collection are not owed because the statute of limitations has run or because their medical bills are barred from collection via the medical provider agreements. (*See*, Conaway Decl. ¶ 18). Instead, every timely claim that presents a valid medical bill or demonstrates payment of a valid medical bill will be paid by the Claim Administrator if the Proposed Settlement is approved.

The Objectors further speculate that Class Members may be called upon by medical providers in the future to pay medical bills that have yet to be sent to Class Members on the sole basis that Plaintiff Goodman received a Methodist bill in February 2017. First, Plaintiff Goodman's situation with Methodist is unique. As the Court is aware, Methodist has waived all medical bills owed by the Class Members. Plaintiff Goodman was erroneously billed in

---

[2] Because a Class Member may have paid a given medical provider more than the Plan would have been required to pay the provider (based upon the negotiated rates), the prospect existed that a given Class Member might not receive 100% of the amount he or she paid (or 100% of the amount that a provider is seeking to collect). (*See*, Conaway Decl. at 18). For example, if a healthcare provider billed patient "John Doe" $100 for a given service, Doe would only receive $52.00 ($100 x 65% x 80%), thereby serving as a theoretical basis the objections raised prior to the filing of the final claims report. However, given that the total dollar amount of the claims can be fully satisfied by the Settlement Fund, no Class Member will receive less than 100$ of their damages.

February 2017 because Methodist did not have Crittenden County Hospital listed as her employer; as a result, Plaintiff Goodman was inadvertently billed for a cost that was waived by Methodist. (*See* Declaration of Shelia Anderson at ¶¶ 3, 8, attached hereto as **EXHIBIT** "**B**"). Thus, this February 2017 bill to Plaintiff Goodman was the result of a clerical error, nothing more. There is no indication that any other Class Member has received any other outstanding bills, whether erroneous or otherwise.

The objections to the proposed Settlement based upon the mere possibility that Class Members may receive such bills in the future are utterly speculative and provide no valid grounds to contest the sufficiency of the Settlement to make the Class whole. Rather, the Objectors rely entirely upon Goodman's aberrational "surprise collection," thereby demonstrating, if anything, that the opposite result is likely the case. In fact, once it found out about the alleged "surprise collection," Lead Counsel immediately contacted counsel for Methodist, who promptly determined that the bill was generated due to a clerical error. (*See* Declaration of Shelia Anderson at ¶ 8). All collection efforts immediately ceased. (*Id.*). Accordingly, Goodman's "surprise collection" is not a collection at all and does not translate into additional, unknown damages to the Class. Objectors accordingly do not point to even one example of a Class Member suffering ongoing exposure to collection efforts outside of the claims that have been made. This Court properly protected the Class through the claims procedures, and the Class is being fully compensated for the claims that were submitted.

Moreover, Sumpter has indicated that he represents approximately 172 of the employee Class Members, along with certain of their family members covered by the Plan as participants. (Dkt. No. 163 p. 4). Including the family members, Sumpter likely represents well into the hundreds of the Members of a 626 Member Class. Yet, of these hundreds of Class Members,

whom have apparently been directly advised by Sumpter, only 67 claims have been filed in total. <u>The large majority of Class Members simply aren't being billed, aren't being dunned for bills, and do not owe any money for which the Plan was responsible</u>.  The Objectors speculations that some future damages may exist are as unlikely to be true as they are ungrounded in fact.  Such speculations should not be considered.

Notably, only 3 persons out of the 667 Class Members have filed objection to the proposed Settlement, two of whom are family members of Sumpter.  This fact in and of itself heavily weighs in support of the Proposed Settlement.  *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017)(noting that the small number of objections to the class settlement further supports approval under Rule 23(e)); *see also*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)(holding that "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor").

Additionally, the fact that Sumpter convinced the named Plaintiff to file an objection holds no special weight.  *Marshall v. NFL*, 787 F.3d 502, (8th Cir. 2015)("We have previously approved class-action settlements even when almost half the class objected to it. We have approved a class-action settlement even when all named plaintiffs opposed it")(citing *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988)(approving settlement where 180 out of 440 class members objected) and *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-27 (8th Cir. 1982)(finding no abuse of discretion even though both named plaintiffs objected to settlement as well as 790 of approximately 3,000 members objected).

Finally, the objections of Sumpter's parents should be given no weight given the Eight Circuit's prohibition on class counsel representing family members.  Specifically, the Eighth Circuit has noted that "there is a reasonable possibility that some specifically identifiable

impropriety will occur when a class counsel is closely related to a class representative." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1155 (8th Cir. 1999).[3]

In the end, the final claims report shows that the Class will be made whole for its damages of $334,380.07 if the proposed Settlement is approved. Objections to the contrary should be overruled.

Finally, even if the Class were somehow not made whole by the proposed Settlement, and it is, that is not the standard for approving the proposed Settlement. To the contrary, class action settlements – like all settlements – rarely, if ever, make an injured plaintiff whole. The standard under Rule 23(e) is whether the proposed Settlement is "fair, adequate and reasonable," as opposed to whether the Class is made whole.[4] There is no question that the proposed Settlement meets the Rule 23(e) standard.

Oddly, the Objectors attempt to argue against this conclusion by stating that the "settlement is not of much value to the class if such a minor percentage of the settlement amount is distributed for the benefit of the class, while the class attorneys receive nearly two-thirds of the settlement amount for fees and expenses…" (Objectors' Memo at pp. 2-3). It is difficult to treat such an argument as a good faith objection when the class is being made whole by the proposed Settlement proceeds. Apparently, all of the Class Members but three individuals, two of whom are Sumpter's parents, agree that the Settlement is, in fact, valuable to the Class as they have not objected thereto. Indeed, as has been demonstrated elsewhere, the portion of the Settlement proceeds to be distributed to counsel includes approximately $100,000.00 in expenses that were

---

[3] As the Court is aware, Sumpter originally filed a lawsuit with his mother, Deloris Sumpter, as the putative class representative.

[4] As one court has noted, the "court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 807 (3rd Cir. 1995).

10

necessary to obtain recovery for the benefit of the Class and approximately <u>half</u> of Lead Counsel's presumptively reasonable lodestar rates.  Blindly objecting to the proposed Settlement by pointing to the percentages that the interested parties receive upon distribution is entirely improper when it fails to account for all of the important factors that justify the agreed-upon distribution.

Moreover, in the world of litigation, there is little incentive for any defendant to pay all or even a majority of the damages demanded by a plaintiff, with one notable exception.  That exception is where an attorney fee shifting statute is at issue that may force a defendant to end the litigation by offering more than it otherwise would in the absence of the fee shifting statute.  This is exactly what occurred in this case.

Indeed, had there been no fee shifting statute available under ERISA, the Defendants would have only offered to pay the Class the $250,000.00 that they repeatedly offered at the failed mediation and insisted that Lead Counsel take any attorney fee from this amount, rather than pay a separate fee award.  In short, given that the Class Members' damages recoverable under ERISA are well below the $500,000.00 Settlement Fund, it is clear that the Objectors simply seek to force Lead Counsel to share in its attorney's fees – fees which, if approved, are essentially half of Lead Counsel's lodestar – despite the fact that all of the damages to the Class Members can and will be easily be satisfied from the Settlement Fund.

**3. Limiting the attorneys' fee award to one-third of the total Settlement value is unreasonable under the present circumstances.**

The Objectors assert that this Court should limit the award of attorneys' fees here to one-third of the overall Settlement amount, and, in doing so, assert that such an award is "reasonable" and "normal."  The Objectors are mistaken in this contention.  Indeed, as Lead Counsel has fully briefed, this Court should award Lead Counsel its attorneys' fees award pursuant to the lodestar

methodology, which is presumptively reasonable and appropriate for statutory fee-shifting cases, such as ERISA cases. (Memorandum of Lead Counsel in Support of Motion for Award of Attorneys' Fees and Expenses and Incentive Award for Plaintiff, Dkt. No. 164-1, pp. 10-17). Moreover:

> [W]hen a defendant agrees to pay fees and costs separately from the benefit for a class, the district court 'may rely on summaries submitted by the attorneys and need not review actual billing records.' *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). Where, as here, class counsel has expended considerable time and effort in procuring a settlement, has independently negotiated the fee amount at arm's length with defendants, and the fee amount does not impact or diminish the total settlement received by class members, the attorneys' fees requested are appropriate. Cf. *Snell*, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *19; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) affirming attorneys' fee award where most of the fee was paid by defendant and not from the class recovery)".

*In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 90294, at *37. The Court should give no credence to the Objectors' argument that a fee award of one-third of the overall Settlement amount is reasonable here.

As Lead Counsel has fully demonstrated, the Court should utilize the lodestar method to assess whether attorneys' fees are reasonable in this instance. The Eight Circuit has recognized that "ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006)(citing *Welsh v. Burlington N., Inc. Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995)); *see also*, *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F. 2d 869 (2nd Cir. 1987)("ERISA attorney's fee provision [29 U.S.C. § 1132(g)(1)] must be liberally construed to

protect purpose of vindicating retirement rights even when small amounts are involved"); *Donachie v. Liberty Life Assur. Co*., 745 F.3d 41, 44-45 (2nd Cir. 2014)("It is well-established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights'")(quoting, *Slupinski v. First Unum Life Ins. Co*., 554 F.3d 38, 47 (2d Cir. 2009)).

The purpose of ERISA's attorney fee shifting provision, then, is to incentivize plaintiff attorneys to take on and vindicate plan participants' rights regardless of how small those rights may yield in terms of a monetary benefit. (*Id*.).

The standard for an award of attorney's fees is <u>not</u> whether the attorneys' service resulted in rendering the ERISA plaintiffs as the "prevailing party" in the litigation. *Hardt v Reliance Std. Life Ins. Co.,* 176 L Ed 2d 998, 1008, 560 U.S. 242, 130 S. Ct. 2149 (2010)("We therefore hold that a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)"). To the contrary, a fee claimant will "satisfy [§ 1132(g)(1)] if the court can fairly call the outcome of the litigation <u>some</u> success on the merits…" *Id*. at 1009 (emphasis added); *see also*, *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408 F.3d 528, 531-32 (8th Cir. 2005)(district court's denial of attorney's fees to plan participant on the grounds that she "lost on almost every issue she presented" was in error because her action did provide some benefit to other plan participants). Accordingly, the Eight Circuit has instructed that a plaintiff providing a meaningful benefit to ERISA plan participants "rarely fails to receive fees." *Starr v. Metro Sys., Inc.*, 461 F.3d at 1040-41.

Moreover, based on the liberal construction of attorney fee shifting under ERISA, the negotiation of the Proposed Settlement in this matter did not merely involve what the Plan could lawfully recover under ERISA for its participants but also the amount of attorneys' fees that the

13

Defendants could be ordered to pay if the plaintiff provided a meaningful benefit to the Plan (and the Class). Here, the negotiated Settlement accounted for both the ERISA damages that were due to the Class and Defendants' potential exposure to attorneys' fees.

Based on Lead Counsel's estimates, the ERISA damages were expected to be well below $500,000.00, as indeed they are. As mentioned above, Defendants refused to settle for ERISA damages for more than $250,000.00. However, after accounting for their potential liability with respect to Class Counsel's legal fees, Defendants' offer to settle increased dramatically, to a total of $1,150,000.00. To make this offer work, Lead Counsel ultimately agreed to be compensated at approximately half of its reasonable lodestar in order to make the Class whole. <u>While the ERISA damages were based on estimates at the time the Settlement was reached, the final claims report makes clear that the estimates were, in fact, accurate</u>. The Class is being made whole, and Class Counsel is entitled to receive the amount of discounted attorneys' fees that were built into the proposed Settlement Agreement. The Objectors' claims that this result is not "reasonable" do not alter this analysis whatsoever.

For instance, the Objectors assert that because Goodman and others originally entered into a contract with Sumpter allowing for attorneys' fees equal to one-third of the recovery, plus expenses, that Lead Counsel and this Court are prohibited from distributing a fee to counsel in excess of one-third of the proposed Settlement amount. This is simply not the case. It is well-established that courts are not limited by such contracts when considering a fee award in ERISA cases. *See, e.g., Douglas v. Evans Indus.*, 184 F. Supp. 2d 636, 641 (E.D. Mich. 2001)("Defendant Union Central has offered no authority for its position that Plaintiff's award of attorney fees under 29 U.S.C. § 1132 (g) must be limited by any contingency agreement she entered into with her counsel. Moreover, the Sixth Circuit has taken a contrary position on this

14

issue"); *see also*, *Bemis v. Hogue,* 935 F.2d 269, 1991 U.S. App. LEXIS 17989, 1991 WL 102385 at *6 (6th Cir. 1991). Accordingly, the Objectors' argument that Lead Counsel and this Court are bound by the contracts between Sumpter and certain Class Members is without merit.

Likewise, the objections pertaining to Lead Counsel's excessive hourly rates are meritless and, indeed, ironic.[5] In the objections, the Objectors assert that Lead Counsel seeks excessive hourly rates and propose that the appropriate range for hourly rate fees in this instance is from $165.00 to $275.00 an hour. (Dkt. No. 174 at p. 10). In her Objection, Goodman likewise states that she "for sure didn't agree to pay any attorney $450.00 to $500.00 an hour." (Dkt. No. 173-1 at 1). Simply put, Lead Counsel is not asking her to do so. If the Court were to award Lead Counsel the fee set forth in the proposed Settlement Agreement, Lead Counsel would receive approximately $200.00 per hour, well within the range suggested by Sumpter and Goodman. On the other hand, if the Court awarded the fee award requested in the Motion of Yolanda Goodman for Attorneys' Fees and Expenses (Dkt. No. 163), Sumpter, who minimally contributed to the case, would, incredibly, receive an hourly rate of $331.60 while Lead Counsel would receive no more than $87.18 per hour for making the Class whole. Such a result, which awards Sumpter an hourly rate more than $50.00 above the <u>maximum</u> he and Goodman claim is appropriate, is grossly unreasonable and should be rejected by the Court out of hand.

On a related note, the Objectors make the point that Sumpter "resents the assertion that the request to limit attorneys' fees in this matter is borne of some nefarious intent" and that "arguing for a lower fee only takes money out of [Sumpter's] pocket as well." (Objectors' Memo at 13). Yet, Goodman and Sumpter, with the support of Sumpter's parents, ask this Court for Sumpter to receive an hourly rate of $331.60 while simultaneously representing to the Court

---

[5] Neither the Objectors nor Sumpter challenge the number of hours spent by Lead Counsel or the litigation expenses incurred and paid for by Lead Counsel.

that the appropriate hourly range is $165.00 to $275.00 an hour, all while asking the Court to limit the hourly rate of Lead Counsel to a maximum of $87.18 per hour.[6] Such a result is nonsensical.

Goodman and Sumpter state that "it doesn't take much common sense to realize that when you have to sit in church with these class members, or bump into them at the grocery store, or look your mother in the face and talk about this case, you just want to do what is right." (Dkt. No. 174 at 13). Indeed. Sumpter, instead of seeking to profit at the expense of Lead Counsel, should tell his fellow congregants, shoppers, and his parents that Lead Counsel, the attorneys who achieved the Settlement that paid for their outstanding medical bills, received a reasonable fee of approximately $200.00 per hour under the terms of a well-crafted Settlement Agreement that made the Class Members whole. Instead, Sumpter, with the support of one Class Member and his parents, has decided to put his own interests above those of the Class and Lead Counsel. Needless to say, the objections should be disregarded by this Court.

## CONCLUSION

Without any assurance of success and despite determined adversaries represented by experienced counsel, Plaintiff and Lead Counsel pursued this litigation to a successful conclusion. Accordingly, Lead Counsel submits that for the reasons set forth herein, the Court should enter an order: (1) finally approving the proposed Settlement the Parties have reached in this case; (2) permitting distribution of the Settlement Fund to those Class Members making valid claims; (3) awarding the proposed Attorney's Fees and Expenses submitted by Lead Counsel; (4) awarding Plaintiff Yolanda Goodman the proposed Incentive Fee Award; and (5)

---

[6] Moreover, Sumpter previously informed Class Counsel that regardless of any fee he receives from the Court, he intends to additionally charge a contingency fee to those Class Members with whom he has a fee contract. (Burns Decl. at ¶ 11). The Court should ensure that this does not occur by awarding Lead Counsel's lodestar and apportioning that award between Lead Counsel and Sumpter.

entering a Final Judgment in accordance with the proposed Settlement Agreement. Lead Counsel further submits that the Court should overrule in their entirety the objections to the proposed Settlement and attorneys' fee award.

DATED this 29th day of September, 2017.

Respectfully submitted,

/s/ Frank L. Watson, III
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Arkansas Bar No. 2008019)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, TN 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwatson@watsonburns.com
Email: bburns@watsonburns.com


/s/ Tim Edwards
John Timothy Edwards (Arkansas Bar No.2010111)
BALLIN BALLIN & FISHMAN, P.C.
Suite 1250
200 Jefferson Ave.
Memphis, TN 38103
Phone: (901) 525-6278
Fax: (901) 525-6294
Email: tedwards@bbfpc.com


*Counsel to Plaintiff Yolanda Goodman and the certified Class*

**CERTIFICATE OF SERVICE**

   I, the undersigned, do hereby certify that the above and foregoing was filed on September 29, 2017, using the CM/ECF system with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court to the following parties and/or sent via U.S. Mail postage pre-paid and by email:

John L. Houseal, Jr., Esq.
Don L. Hearn, Jr. Esq.
GLANKLER BROWN, PLLC
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119

*Counsel for Defendants Eugene Cashman, III
and David G. Baytos*

Mark W. Peters, Esq.
John E.B. Gerth, Esq.
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219

*Counsel for Defendants Crittenden Hospital Association, Inc.;
W. Brad McCormick; Jamie R. Carter,Jr.; David Raines, Jr.;
Jason W. Collard; Herschel F. Owens; Andrew Luttrell;
Donna B. Lanier; Carol C. McCormack; Keith M. Ingram;
Randall Catt; William Johnson; Lannie L. Lancaster;
Julio P. Ruiz; Sherry L. London; Ness S. Sechrest; Randy R. Sullivan;
and Leven Williams.*

Daniel K. Ryan, Esq.
Peter E. Pederson, Esq.
HINSHAW & CULBERTSON, LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601

*Counsel for Defendant CIGNA Health
and Life Insurance Company*

Denny Sumpter, Esq.
FOGELMAN, ROGERS & COE
123 W. Broadway
West Memphis, Arkansas 72301

               /s/ Frank L. Watson, III
               Frank L. Watson, III